BARRY, Judge.
This matter was tried before Commissioner Rivet sitting Ad Hoc with the District Court. His recommendation was adopted by the lower court from which plaintiffs appeal. The Statement of the Case, Contention of the Parties, and Facts not in Dispute are accurate, well written, and supported by the record, and we adopt them in their entirety:
STATEMENT OF THE CASE
“Plaintiffs seek damages for an alleged breach of a written lease and for allegedly tortious conduct by defendants, while they were in possession of plaintiffs’ home as tenants, and damages are also sought against a defendant, not party to the written lease, such damages being based upon a quantum meruit for unauthorized use of the premises.
CONTENTION OF PARTIES
“Plaintiffs contend, as to the defendants, lessees, that they sub-leased the premises without plaintiffs consent, contrary to the expressed terms of the lease; that the premises were used as a law-office, contrary to the lease conditions, and that defendants caused damage to plaintiffs’ property, in a greater extent than just usual decay, wear and tear, as allowed by the lease.
“As to the defendant, not a party to the written lease, plaintiffs contend that he occupied the premises without their consent and used same for an office, and that he should be made to compensate plaintiffs, based upon a quantum meruit.
“Plaintiffs further contend that all three defendants are liable in solido for the value of possessions and fixtures which were discovered missing or damaged immediately after the defendants vacated the premises, and that all three defendants are likewise liable in solido in damages for mental anguish, inconvenience and aggravation experienced by plaintiffs.
“General denials were filed by all three defendants. Some ten months after issue was joined defendants, lessees, filed a reconventional demand against plaintiffs. Said reconventional demand has no merit since it was filed without leave of court and since there was no service thereof made upon plaintiffs.
FACTS NOT IN DISPUTE
“Plaintiffs, owners of the premises 3715 Coliseum Street, entered into a written contract with defendants, on August 10,1976, for the lease of said premises, in its furnished condition, for a term of 12 months beginning September 15, 1976 *406 and terminating September 15, 1977, at a monthly rental of $500.00, the premises to be used for residental purposes only.
“Pursuant to the lease requirements defendants deposited $700.00, $500.00 of which was to be used for the last month’s rent and $200.00 was a damage deposit, to be refunded upon termination of the lease, if the property, at that time, is in the same condidtion [sic] as when rented, wear and tear excepted.
“The lease provided that there would be no renting, or sub-letting or granting use or possession of the premises to any other party without the written consent of the lessors.
“Plaintiffs left for England on September 9, 1976, leaving the possession of the premises to the mother of plaintiff-wife, who was to turn over possession to defendants on September 15, 1976.
“The defendants, lessees, permitted the defendant Vincent Scalesi to occupy the bedroom on the second floor of the premises over a period of six months, from February of 1977 to September of 1977.
“The defendant-husband lessee, on occasion, did see clients in the premises 3715 Coliseum Street. .
“From September, 1976 to August, 1977, the premises were visited by ten individuals at various times, and on each occasion the premises were observed to be well kept and in good order, and on these various visits no clients of defendant-husband were observed in the premises.”
We also approve and adopt the Commissioner’s Findings, except for the holding that plaintiffs are liable for return of the lessees’ damage deposit. Following is that portion which we adopt:
FINDINGS
“Admittedly, plaintiffs left for England on September 9th and defendants did not take possession of the premises 3715 Coliseum Street until September 15th. The plaintiff husband testified that his mother-in-law occupied the premises from September 9th to September 15th and was to turn over the premises to defendants on September 15th, in the exact condition in which plaintiffs left the premises on September 9th. No proof was offered to support this testimony. Plaintiffs, being absent from the scene had no way of knowing personally that the mother-in-law did occupy the premises during the interim, or that what was turned over to defendants was in the exact condition as existed on September 9th. The mother-in-law was not produced as a witness, and consequently it became impossible for plaintiffs to state what was turned over to defendants or the condition of what was turned over to them. The evidence presented did disclose that while she occupied the premises, plaintiff-husband’s mother-in-law, on occasion, entertained friends therein. Under the circumstances, it was impossible for plaintiffs, returning from England some eleven months later, to say exactly what was in their home or the condition of the contents thereof, when same was turned over to defendants on September 15th.
“Plaintiffs contended that they discovered furniture damaged, plants missing, paintings and etchings damaged, a handmade guilt ruined, a stereo set disconnected, a white sofa soiled, a poetry book missing, two phonograph records and two pieces of crystal missing. They presented several inventories made after their return from England, with values placed thereon by the plaintiff husband. These are self serving [sic] at best and do not constitute legal proof, under the circumstances as heretofore related. The same can be said for checks drawn by plaintiffs to various payees.
“Plaintiffs failed to submit proof in support of their contention that such payments were made necessary as a result of defendants’ abuses or violation of the lease provisions.
“The evidence revealed that the defendant husband maintained a law office on Belle Chasse Highway at the time he took possession of plaintiffs’ premises, and that he continued to maintain that *407 office thereafter. On occasion clients would call or drop by to see him but he made no appointments to meet them at the residence nor did he maintain the residence as an office.
“With respect to the occupancy by defendant Vincent Scalesi of the premises, the evidence disclosed that following a divorce from his wife in New York, he was invited as a guest, to use the upstairs bedroom, which was an extra room designated for guest-use. He paid no rent. He traveled to and from New York, where he visited with his parents, and he did not at any time have sole use or possession of the premises, nor did he conduct business therefrom, since he was, at the time, unemployed.
“Plaintiffs returned from England on August 14, 1977. Defendants were still tenants at 3715 Coliseum Street, the termination date of the lease being September 15th, 1977. Defendants agreed to vacate the premises by midnight September 1st. The $500.00 deposited for the last month was used to pay the rent from July 15th to August 15th, and defendants agreed to pay $250.00 for the two weeks occupancy from August 15th to September 1st. Plaintiffs contended that defendants failed to pay this $250.00. This claim is likewise without merit. Defendants [sic] exhibit D-3 is a cancelled check issued by defendant on August 15, 1977 to the order of the plaintiff-husband, for $250.00 and by plaintiff endorsed.
“There existed a dispute relative to utility bills. However, the evidence clearly showed that plaintiffs, who had lived in the premises during August of 1976 prior to their departure for England, realized that the utility bill would arrive after their departure. They therefore agreed with defendants that if defendants paid the bill when it arrived plaintiffs would in turn pay defendants’ last utility bill which would arrive after defendant’s departure from the premises. And payments of these bills were made in accordance wtih [sic] such agreement, plaintiffs paying the bill received after defendant’s [sic] departure, covering service from July 22nd to August 17th. But defendants occupied the premises to September 1st. The next bill received covered services from August 18th to September 19th. By stipulation the parties agreed that defendants’ share of this bill, in the amount of $217.68, for the period from August 18th to September 19th would be $100.00. The bill was paid by plaintiffs and consequently defendants are indebted unto plaintiffs for this $100.00.”

“The claim against the defendant Vincent Scalesi should be dismissed.”
Ten months after defendants’ answer was filed they reconvened for double their damage deposit plus interest and attorney fees. However, the reconventional demand was not filed with leave of court as required by LSA-C.C.P. art. 1033. [1] Plaintiffs were not required nor did they answer the reconvention and no preliminary default was taken, therefore, any matters raised therein were not before the court. We feel the Commissioner fell into legal error in holding that “. . . since plaintiffs have failed to sustain the burden of proof in support of their claims, this $200.00 (referring to defendants’ damage deposit) should be refunded to defendants.”[2]
For the foregoing reasons, the District Court judgment is annulled insofar as it orders return of the Two Hundred ($200.00) Dollars damage deposit to C. Scott Reis and Rebecca Cunard Reis; judgment is there *408 fore entered in favor of Vernon L. Palmer and Scottie L. Palmer and against C. Scott Reis and Rebecca Cunard Reis in the sum of One Hundred ($100.00) Dollars, with legal interest from the date of judicial demand until paid. Each party to pay their own costs.
ANNULLED IN PART; AFFIRMED IN PART.

. LSA-C.C.P. art. 1033. Delay for filing incidental demand
“An incidental demand may be filed without leave of court at any time up to and including the time the answer to the principal demand is filed.
“An incidental demand may be filed thereafter, with leave of court, if it will not retard the progress of the principal action, or if permitted by Articles 1066 or 1092.”

. In Contention of the Parties, supra, the Commissioner properly noted that the “.. . recon-ventional demand has no merit since it was filed without leave of court. . .